UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>RAUL HECTOR )<br>VASQUEZ-ROBLES, )<br>)<br>Defendant. ) | Case No.: 2:25mj55 |

## MEMORANDUM OPINION AND ORDER

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f), the Court held a hearing on April 4, 2025, on the United States of America's ("the Government") Motion to Detain Defendant Raul Hector Vasquez-Robles ("Defendant") Pending Trial pursuant to 18 U.S.C. § 3142(f)(2) ("the Motion for Detention"). At the hearing, the Court heard argument from the parties. For the reasons stated on the record at the hearing and explained below, the Government's Motion for Detention and its Motion to Stay the Court's Order of Release Pending Review ("Motion to Stay") are **DENIED**, and the Court **ORDERS** Defendant's release on bond, the conditions of which are described below, pending trial.

### I. BACKGROUND

The Government charged Defendant via criminal complaint on March 21, 2025, with one count of Illegal Reentry by Removed Alien, in violation of 8 U.S.C. § 1326(a). ECF No. 1. The Court held Defendant's initial appearance on April 2, 2025. ECF No. 5. At the initial appearance, the Court appointed the Federal Public Defender to represent him, and the Government moved to detain Defendant pursuant to § 3142(f)(2)(A). *Id.* After proffering that Defendant provided a false

name and identification to police at the time of his arrest, the Court found that the Government had provided a sufficient basis that Defendant presented a serious risk of flight, thereby entitling it to a detention hearing. Consequently, the Court ordered Defendant temporarily detained and set the matter for detention and preliminary hearings. *Id.*

The Court held the preliminary hearing[1] and a hearing on the Government's Motion for Detention on April 4, 2025. ECF No. 11. Assistant United States Attorney Darryl Mitchell appeared on behalf of the Government, and Assistant United States Public Defender Michael Tagliabue appeared for the Defendant. *Id.*

## A. The bond report, ECF No. 10

Pertinent to the issue of bond, the Defendant is fifty-three years old, was born in Mexico, and has resided in the local Virginia area for the past ten years. He has resided with his long-term girlfriend at the same address in Portsmouth, Virginia, for the past four years. He was divorced about twelve years ago, and has two adult children who reside in North Carolina. He has performed work as a handyman and construction worker for the past thirty years. In 2024 he was charged with three misdemeanor/petty offenses in Chesapeake, Virginia, related to the failure to have a proper driver's license, but those charges were dismissed. In February 2025 he was charged with drug possession and Identify Theft: Obtain ID to Avoid Arrest. At the hearing, the probation officer clarified that the ID charge resulted in a conviction and sentence of time served, and the drug charge was dismissed. The probation officer assessed Defendant as a Pretrial Risk

---

[1] Rather than conduct entirely separate and duplicative hearings, the Court advised the parties that it would consider evidence and proffers to apply to both the question of probable cause and detention. Following the completion of the probable cause proffer and response, neither party elected to argue probable cause, and the Court found that, based on the Government's proffer and exhibits, probable cause existed to support the charge listed in the Criminal Complaint, ECF No. 1.

Assessment (PTRA) category 2, and recommend his release on a personal recognizance bond with supervision and certain other conditions.

## B. The Government's proffer of evidence

The Government proffered and relied on the testimony of Immigrations and Customs Enforcement ("ICE") Deportation Officer Ryan Hamilton ("Officer Hamilton") at the hearing.[2] Officer Hamilton identified Defendant and testified that on February 27, 2025, he interviewed Defendant at Chesapeake City Jail. Officer Hamilton testified that on February 2, 2025, the Chesapeake City Police Department arrested Defendant following a traffic stop for driving with an expired registration. Officer Hamilton testified that, according to the report issued incident to that arrest, ECF No. 11, attach. 2, Defendant provided a false name to the arresting officers and initially did not produce identification. *Id.* at 3. Police found a wallet inside Defendant's vehicle after Defendant consented to a vehicle search. *Id.* The wallet contained "numerous names printed on various cards" and loan paperwork bearing the name Hector Vazquez. *Id.* Defendant said that Hector Vazquez was his friend. *Id.* Eventually, the police discovered in Defendant's vehicle a Mexican passport, issued on January 12, 2024, bearing the Defendant's name. ECF No. 11, attach. 3. The Government also proffered that Defendant gave officers a false address and date of birth. Defendant ultimately pled guilty to a charge of Identity Theft: Obtain ID to Avoid Arrest in Chesapeake General District Court, and a separate charge of Drugs: Possess Sch I or II was nolle-prossed.

Additionally, Officer Hamilton testified that the Virginia State Police had arrested

---

[2] The Government also proffered Officer Hamilton's affidavit in support of the Criminal Complaint, the Chesapeake City Police Department report from Defendant's February 2, 2025, arrest, and a Mexican passport purportedly issued to Defendant. *See* ECF No. 11, attachs. 1–3.

3

Defendant under the name Hector Robles Vazquez Robles in Portsmouth, Virginia in 2024.[3] Using that name to search for Defendant's criminal history, Officer Hamilton found that Defendant had been arrested several times in Wayne County, North Carolina for driving under the influence, driving on a revoked or a suspended license, and for an open container violation. Defendant's most recent North Carolina arrest occurred in 2015.[4]

Officer Hamilton testified on cross-examination that Defendant was cooperative and polite while Officer Hamilton interviewed him. Defendant agreed to have his fingerprints and a photo taken. Defendant informed Officer Hamilton that he was deported from the United States in 1999, but returned to the United States in 2000. He also told Officer Hamilton that he did not have legal residency status in the United States. The Defendant's Bond Report indicates, and the Government confirmed, that ICE reinstated a Final Order of Removal for Defendant on April 2, 2025, and lodged a detainer against him with the United States Marshals. ECF No. 10 at 3.

## C. Defendant's proffer of evidence

The Defendant first proffered information from the United States Department of Justice Special Report on Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011-2018 ("Special Report"). *See* ECF No. 11, attach. 4. The Special Report states that 2 percent of defendants who are undocumented non-United States citizens granted pretrial release violated their conditions of release, and 0.5 percent of those defendants failed to appear. *Id.* at 11.

---

[3] The Government proffered that Defendant was arrested in Portsmouth for Failure to Carry/Exhibit License, Failure to Obtain a Virginia License (New Resident), and Failure to Update License, and that all of these charges were dismissed. According to the Government's proffer, Defendant also gave a false date of birth to the Virginia State Police.

[4] No charges in North Carolina were identified in the bond report. *See* ECF No. 10.

Defendant then proposed a release plan to the Court. Defendant proffered that Carol Sipes Palmer would serve as a third-party custodian for Defendant. Neither Palmer nor the other residents of her home have a criminal history, there are no firearms in her home, and she owns and operates a cleaning business. Palmer has known Defendant for approximately five years. Defendant proffered that he did "construction and handiwork" for Palmer. Defendant also proffered the supportive statements of several other individuals for whom he completed construction projects in Portsmouth.

Defendant proffered that he has family in North Carolina, including a son who manages a pharmacy there, and an ex-wife with whom he still communicates. Defendant's son stated that Defendant moved to Virginia in search of work to support his family. Defendant moved to Virginia from North Carolina about ten years ago.

## II. DISCUSSION

For the reasons explained on the record and now further discussed below, the Court **FINDS** that the Government has failed to establish by a preponderance of the evidence that Defendant poses a risk of nonappearance, and the Court can impose a combination of conditions that will reasonably assure his appearance at trial. Therefore, the Government's Motion for Detention is **DENIED**, and Defendant is **ORDERED** released from custody on a personal recognizance bond subject to the conditions set forth below.

After the Court denied the Motion for Detention, the Government moved to stay the Court's Order of Release pending an appeal to the District Judge. For the reasons explained at the hearing and now further discussed below, the Court **FINDS** that the Government failed to establish its entitlement to a stay of the Order of Release. Therefore, the Motion to Stay is also **DENIED**. The

Court addresses each motion in turn.

**A. After considering the factors listed in 18 U.S.C. § 3142(g), the Court finds that it can fashion a combination of conditions that will reasonably assure defendant's appearance at trial.**

The Bail Reform Act, 18 U.S.C. § 3142(f), requires that the Court "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community . . ." when the case involves " a serious risk that [the defendant] will flee." § 3142(f)(2)(A). The Government bears the burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the Defendant's appearance as required.[5] *United States v. Nunez*, No. 4:25-CR-07, 2025 WL 875803, at *2 (E.D. Va. Mar. 20, 2025).

The Bail Reform Act instructs the Court to consider the following four factors in determining whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

---

[5] At the detention hearing, the Government stipulated that it did not contend that Defendant should be detained because he is a danger to the community as contemplated in § 3142(f).

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release bending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

§§ 3142(g)(1)–(4). Here, the Government moved to detain Defendant pursuant to § 3142(f)(2) and argued that no combination of conditions exist that could reasonably assure Defendant's appearance at trial. The Government contended that Defendant presents a risk of nonappearance specifically because of his lack of identification other than a foreign passport, his use of a false name, address, and date of birth when he was arrested in Chesapeake, and his attempt to say that the loan paperwork found in his wallet when he was arrested bore the name of a friend instead of his own. Additionally, the Government argued that the fact that Defendant was not carrying his wallet, but instead left it in his vehicle when arrested, indicates an "intent to deceive [the police] concerning his identity." The Government contended that because the passport found in Defendant's vehicle during the Chesapeake arrest was issued in early 2024, it must have been "in the Defendant's possession when he was stopped by the trooper in Portsmouth" before the Chesapeake arrest. The Government also argued that Defendant provided a false name to police when he was arrested in North Carolina, showing another attempt to obfuscate his identity. Overall, the Government posited that these instances demonstrate Defendant's "efforts to conceal his identity," in part to prevent his deportation, which in turn show that the Defendant presents a risk of nonappearance.

Defendant contended that in some cases, the discrepancy between his true name and the name he provided to police was the result of a mistake, not an intentional effort to deceive arresting

7

officers, pointing to the very slight difference in spelling or order of names. Defendant also argued that appointing an appropriate third-party custodian and implementing electronic monitoring would mitigate his risk of flight. Defendant was charged with Illegal Reentry by Removed Alien pursuant to 8 U.S.C. § 1326(a) and none of the statutory enhancements apply, so the maximum sentence he faces is two years. Defendant argued that this relatively low potential sentence and a lack of aggravating factors, as well as his extensive ties to the community through his work, friends, and family, and his cooperation with Officer Hamilton's investigation, weigh in favor of release and provide an incentive for Defendant to refrain from fleeing. Similarly, Defendant argued that the Special Report shows that Defendant is statistically unlikely to violate his conditions of release or flee.

The Government and Defendant specifically disagree over whether the Court should consider the ICE detainer lodged against Defendant in assessing his risk of nonappearance. Although it relied upon the Defendant's use of false or misleading identifying information in arguing for his detention, the Government also contended that the Court "can consider [the ICE detainer registered against Defendant] and the likelihood of deportation when it assesses risk of flight." The Government clarified its argument by claiming that the existence of the detainer and the possibility of deportation could give Defendant an additional reason to flee from prosecution and thus enhanced his risk of nonappearance.

Citing *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015), the Defendant argued that the Court should rely neither on the existence of the ICE detainer nor the possibility of Defendant's imminent deportation in determining whether a combination of conditions exists that could reasonably assure Defendant's appearance at trial. The Court addresses these arguments

through the four factors listed in 18 U.S.C. §§ 3142(g)(1)–(4), keeping in mind that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

*1. The nature and circumstances of the offense*

The Court finds that the nature and circumstances of the offense weigh in favor of release. As Defendant emphasized, Defendant faces a maximum sentence of two years in prison on the single charge of Illegal Reentry by Removed Alien pursuant to 8 U.S.C. § 1326(a) contained in the criminal complaint. The relatively short sentence Defendant faces weighs in favor of release. *See United States v. Suastegui*, No. 3:18-MJ-00018, 2018 WL 3715765, at *2 (W.D. Va. Aug. 3, 2018) (finding that a defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326(a) did not "face a lengthy prison sentence if convicted").

Related to the charge of Illegal Reentry by a Removed Alien is the fact that ICE lodged a detainer against Defendant. During the hearing, a United States Marshall confirmed that, were Defendant released on bond, he would immediately be transferred to the custody of ICE because of the detainer. And the Government later clarified that, if in fact Defendant is not detained and instead ordered released subject to the conditions described below, ICE will likely take custody and proceed with his removal:

> If the defendant is placed on home electronic monitoring, if a bracelet is affixed to his body . . . ICE will cut it off and . . . he will be deported from this Country within three or four days . . . he will be moved on Monday to an immigration detention facility in Caroline County and will shortly be flown to Texas or Louisiana or a location much closer to the border, and he will be deported from this country . . .

9

Were Defendant detained by ICE and then removed within a week, he would obviously be absent from his next court appearance.[6] In considering this unique situation, the parties dispute whether, or to what extent, the Court should consider the ICE detainer in determining whether it can fashion a set of conditions that will reasonably assure the Defendant's appearance at all future court dates.[7]

Both the Tenth and Ninth Circuits recognize that the existence of an immigration detainer and the threat of deportation do not create an automatic bar to a defendant's pretrial release pursuant to § 3142(f)(2)(A). In *Santos-Flores*, the district court ordered the defendant detained because it found that if he were released, "he likely would be unable to appear at trial because he would be detained by [ICE] and removed from the United States." 794 F.3d at 1090. The Court held that the district court erred in relying on the defendant's potential deportation in finding that no combination of conditions existed that could reasonably assure his appearance at trial. *Id.* at 1092. The Court explained that the risk of nonappearance referenced in § 3142(f) "must involve an element of volition," and therefore the court could not "substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act." *Id.* at 1091–92; *see United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention can be

---

[6] That the Government would prefer to remove Defendant rather than permit him to stand trial if he is given a bond reflects an Executive Branch policy choice that seems to further minimize the seriousness of the offense.

[7] The ICE detainer creates a clash between two separate arms of the Executive Branch. In a similar situation involving an immigration detainer and the issue of detention, this Court recognized "the tension between ICE's ability to initiate removal proceedings while a defendant is awaiting trial on a federal criminal charge and the [Department of Justice's] desire to prosecute said charge." *United States v. Leon-Silva*, No. 122MJ355RDAIDD, 2023 WL 2795810, at *4 (E.D. Va. Apr. 5, 2023). "While it is concerning that this scheme may impair the Government's ability to prosecute, absent clear authority to the contrary, this Court does not find it appropriate to resolve the interplay of agencies within the Executive Branch on the Executive Branch's behalf." *Id.*

10

based."); *United States v. Mejias-Mejias*, No. 1:25-MJ-611, 2025 WL 846435, at *3 (D. Md. Mar. 18, 2025) ("[N]on-appearance caused by the action of another entity—including a different government agency—does not suggest that the accused chose to flee and not appear in court.") (collecting cases); *United States v. Leon-Silva*, No. 122MJ355RDAIDD, 2023 WL 2795810, at *2 (E.D. Va. Apr. 5, 2023) (finding that "the existence of a detainer is not dispositive" when conducting the analysis required by § 3142(g)(1)–(4)); *Nunez*, 2025 WL 875803, at *2 ("[T]he Court may not, and will not, substitute a categorical denial of bail based on the likelihood of an ICE detainer as a determining factor that Defendant poses a serious risk of flight.").[8] Therefore, the Court does not consider Defendant's potential deportation, and his potential inability to appear if he is deported, to categorically bar his release from custody pending trial.

However, the Government correctly argued that the Court may still consider the Defendant's ICE detainer and potential deportation as factors that may motivate him to flee and not appear. *See Leon-Silva*, 2023 WL 2795810, at *2 ("The Court does not deny that immigration consequences are relevant to Defendant's risk of flight in the detention determination, but the existence of a detainer is not dispositive."). Even though immediate removal may give the Defendant a motivation to flee, Defendant came from Mexico to the United States where his family resides, indicating that there is also an incentive for him to remain in the United States. Therefore, the existence of the ICE detainer remains non-dispositive, and does not tilt this factor in favor of detention.

---

[8] Courts have addressed the impact of an immigration detainer on both the "serious risk of flight" analysis to determine whether the Government is entitled to a detention hearing set forth in § 3142(f)(2)(A) and the risk of nonappearance contemplated by § 3142(g). *Compare Mejias-Mejias*, 2025 WL 846435, at *3, *with Leon-Silva*, 2023 WL 2795810, at *4.

2. *The weight of the evidence*

The weight of the evidence against Defendant, as outlined in the Government's proffer, is strong and weighs in favor of detention. The Government's proffer indicates that Defendant is a citizen of Mexico who has not obtained permission from the Department of Homeland Security or the Attorney General to be in the United States. This is supported by the documentary evidence in this case and the Defendant's own statements to Officer Hamilton.

3. *The Defendant's personal history and characteristics*

Defendant's personal history and characteristics weigh against detention. Defendant was born in Mexico but has resided in the United States for more than twenty years. According to Defendant's proffer, the individuals who hired Defendant to assist them with construction projects hold him in high regard. Defendant also has ties to the area through his family and his relationships with his various employers and friends. Defendant's criminal history is limited, and the Special Report Defendant proffered suggests that individuals, like Defendant, who are undocumented non-United States citizens present a low likelihood of non-appearance. The dispositions of the charges Defendant accrued in North Carolina in 2015 are unknown. In Chesapeake General District Court, Defendant's drug charge was nolle-prossed, and he pled guilty and was sentenced to time served for the identity theft charge. The weight of the evidence does suggest that Defendant provided false information to authorities on several occasions.

4. *The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release*

The risk Defendant's release poses to the community is minimal. Additionally, the Government based its argument on the Defendant's risk of nonappearance, not any alleged danger his release would pose to the community.

After considering these four factors, the Court **FINDS** that it can impose a combination of conditions that will reasonably assure the Defendant's appearance at trial. Therefore, the Court **ORDERS** the Defendant released on a personal recognizance bond, but not before the conditions listed below are imposed. The Court also appoints Carol Sipes Palmer as Defendant's third-party custodian.

Defendant's bond is subject to the following conditions: he must not obtain new travel documentation, he must reside at Carol Sipes Palmer's fixed address as listed in the Defendant's bond report, he must submit to electronic monitoring, he must remain within the Eastern District of Virginia, he must adhere to a curfew lasting from 8:00 p.m. to 6:00 a.m., he must not have access to any firearms or other destructive device, he must submit to substance abuse testing, he must not use any controlled substance unless he is prescribed a controlled substance by a licensed medical provider, he is subject to drug testing and treatment if deemed necessary by Probation, and he must report to the United States Probation Office, as soon as possible, any contact with law enforcement. The Court authorizes Defendant's release only after these conditions, including electronic monitoring, are implemented.

## B. The Government fails to demonstrate that a stay of the Court's Order of Release is warranted.

The Government moved to stay the Court's Order of Release at the hearing pending its appeal of that Order to the District Judge pursuant to § 3145(a)(1). The Defendant disputed the Government's request and argued that the Government failed to demonstrate that a stay of the Order of Release is appropriate. After considering the arguments of both parties, the Court **DENIES** the Government's oral Motion to Stay the Order of Release.

The Court looks to the four factors set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009),

13

in determining whether to grant a stay of the Order of Release. *See United States v. Pavon-Andino*, No. CR 25-MJ-00022-TPO, 2025 WL 446143, at *4 (D. Colo. Feb. 10, 2025) (considering the *Nken* factors to determine whether to grant a stay of the Court's order of release in an illegal reentry case); *United States v. Eduardo Leon-Silva*, No. 1:22mj355, ECF No. 20 at 1 (E.D. Va. Mar. 31, 2023) (denying the Government's motion to stay after considering the *Nken* factors as described in an opposition to the Government's motion to stay an order of release). Those factors are: (1) whether the stay applicant has made a strong showing of success on the merits of the appeal, (2) whether the absence of a stay will cause irreparable harm to the moving party, (3) whether the issuance of a stay will substantially injure the other interested parties, and (4) whether the issuance of a stay supports the public interest. *Nken*, 556 U.S. at 434.

As the party moving for the stay, the Government bears the burden of proving that a stay is warranted. *Id.* at 433–34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."). Considering the first factor, the Government primarily argued that the evidence it submitted at the hearing, specifically the Defendant's failure to identify himself to authorities when arrested and his provision of false identities and addresses, show that Defendant presents a risk of nonappearance and therefore makes the Government's success on appeal likely. Turning to the second factor, the Government argued that it will be irreparably harmed if the Court does not grant the stay because the Defendant will likely be deported before the Government's appeal can be resolved. *See supra* Section II.A.1 (Discussing Defendant's likely deportation after release). Discussing the third factor, the Government conceded that the Defendant would not be substantially harmed by the Court's denial of the Government's Motion to Stay. Finally, considering the fourth factor of the public interest, the

14

Government contended that the public interest lies in adjudicating this matter by trying the Defendant for the single count of illegal reentry instead of allowing him to be deported.

Defendant argued that the Court faced no new evidence suggesting that its original decision to order Defendant's release was incorrect, so the first *Nken* factor weighed against granting a stay.[9] On the second factor, the Defendant again argued that the harm the Government would suffer absent a stay would simply be caused by another agency within the Executive Branch itself, and was therefore an insufficient reason to grant a stay. Defendant argued that he would be injured by being detained pretrial pending the Government's appeal even after the Court found that a combination of conditions exists that will reasonably assure his appearance at all future court proceedings. Finally, the Defendant argued that the public interest lies in granting a Defendant bond when the Court determines that a combination of conditions exists that will reasonably assure his appearance at all future court proceedings.

The Court **FINDS**, after considering the *Nken* factors, that a stay of its Order of Release is not warranted. The Government failed to show, via new evidence or argument, that it is likely to succeed on the merits on appeal to the District Judge. The Government argued that it will be harmed if the Court's Order of Release is not stayed because Defendant may be deported before it can prosecute him. But that harm is threatened by the Government itself and does not provide a basis for a stay. Applying the third *Nken* factor creates a two-sided question that renders this factor

---

[9] Defendant first argued that the Bail Reform Act prohibited the Court from staying its Order of Release. This argument is unpersuasive. In *Nken*, the Supreme Court held that the traditional stay considerations governed a Court's decision to stay its orders instead of a statutorily imposed limitation on injunctions. 556 U.S. at 426. Defendants also submitted a Motion in Opposition to Stay of Order of Release filed by the Federal Public Defender's office in *Leon-Silva*. See ECF No. 12, attach. 1. That Motion in Opposition clearly states that it does not question the Court's authority to issue a stay of its order of release pending appeal pursuant to the Bail Reform Act. *Id.* at 2 n.1 ("The defense does not dispute that the Court has the discretion to issue a stay, the only question of law addressed by the government's motion.").

non-dispositive. Defendant would be harmed by being detained after the Court has determined that a combination of conditions exist that will reasonably assure his appearance at trial. But being released and then immediately deported would also constitute a significant injury. Finally, the public interest lies in granting bond to any defendant who qualifies for it. *See Salerno*, 481 U.S. at 755. Given this analysis, the Government has failed to carry its burden, and therefore, the oral Motion to Stay the Court's Order of Release is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Order to the United States Attorney, the United States Marshal, the United States Pretrial Services Office, and counsel of record for the Defendant.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 7, 2025